**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FRANZ GOLDING, | Civil Action |
| Petitioner, | No. 20-6571 (CPO) |
| v. | |
| WARDEN, FCI Fort Dix, | **OPINION** |
| Respondent. | |

**O'HEARN, District Judge.**

Petitioner is a federal prisoner, and he is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  Respondent filed an Answer opposing relief, (ECF No. 13), and Petitioner did not file a reply.  For the reasons set forth below, the Court will invoke the concurrent sentence doctrine and dismiss the Petition.

## I.      BACKGROUND

This matter arises from Petitioner's criminal case in the United States District Court for the Southern District of New York.  That court set forth the underlying facts as follows:

> From late 2003 until early 2005, Shawn Peterkin ("Peterkin") ran a marijuana business in the Bronx. He was assisted in this enterprise by numerous individuals, including Golding, Keino Simpson ("Simpson"), Omar Ken ("Ken"), Damian Brown ("Brown"), and Dwayne Palmer ("Palmer").
>
> In 2005, Peterkin and Simpson had a disagreement concerning a quantity of marijuana for which Peterkin had not been paid. As a consequence, in early April of that year, Simpson and Ken forced Peterkin into his home at gunpoint, attacked him and his family, and stole a large quantity of marijuana and nearly $50,000 in cash. This, in turn, led to internecine warfare, including several shootouts involving Peterkin, Golding, Brown, and Palmer on one side, and Simpson and Ken on the other.
>
> During the early morning of April 16, 2005, Peterkin, Brown, Golding, and Palmer were in Peterkin's silver Nissan Maxima when

they began shooting at three vehicles driven by Simpson, Ken, and a man named David Reeves ("Reeves"). Peterkin, Brown, and Palmer were using handguns; Golding was using an AK–47 automatic rifle. During a subsequent chase, the occupants of the Maxima riddled Simpson's car with bullets, and he eventually crashed into a parked car. Simpson died at a nearby hospital a little while later.

Immediately after the shooting, Peterkin, Brown, Palmer, and Golding fled across the George Washington Bridge to a motel ("Motel") in Fort Lee, New Jersey. Early the next morning, law enforcement officers arrested Peterkin, Golding, and Palmer, each in a different room at the Motel, and seized several firearms, including a loaded .40–caliber Fratelli Tanfolio semi-automatic handgun found in Golding's room. At the time of his arrest, Golding had in his possession a ledger reflecting various drug transactions. The officers executing the arrests also found shell casings in Peterkin's Nissan that had been fired from an AK–47–type gun.

The only eyewitness testimony concerning the Simpson murder came from Ken. He described the dispute between Peterkin and Simpson concerning marijuana, admitted to robbing Peterkin's home and assaulting Peterkin and his family, and described the violent confrontations that followed that incident.

In particular, Ken testified that on April 16, 2005, he, Simpson, and Reeves were in three separate cars parked near 219th Street and White Plains Road in the Bronx, when Peterkin, Brown, Palmer, and Golding arrived in Peterkin's Nissan and began shooting at them. Golding was using an AK–47. After the targets of the attack drove off in their respective vehicles, a high speed chase ensued during which Peterkin, Brown, Palmer, and Golding continued to fire. At one point, after Ken stopped at a gas station, Reeves called Ken's cell phone. In response to Reeves' question, Ken indicated that Peterkin, Brown, and Golding were the shooters; Reeves responded that they had killed Simpson.

A Government ballistics expert testified that ten bullets and shell casings fired from an AK–47 were found at the crime scene, some of which matched those found in Peterkin's vehicle, and that one of the bullets recovered from Simpson's body had been fired from an AK–47–type rifle. Another Government witness, Detective John Murray of the New York City Police Department ("NYPD") ("Det.Murray"), testified that Golding made a statement at the Motel after waiving his *Miranda* rights. In brief, Golding admitted his role in the shooting and the violent episodes that preceded it. Golding

also admitted that he and the others involved in the April 16 incident had used numerous firearms, including .40–caliber handguns, 9–millimeter handguns, and an AK–47 assault rifle. Aaron Royes ("Royes"), one of Golding's fellow inmates, also testified that Golding admitted to him that "he killed a guy for robbing his friend" and that he had an AK–47 at the time of the murder.

George M. Goltzer, Esq., ("Mr.Goltzer") represented Golding in the District Court and on appeal. Because the charges against Golding included the crime of murder, Judge Jones (to whom the case then was assigned) also appointed Frederick Cohn, Esq., to serve as "learned counsel." (*See* Cr. ECF No. 80). Although both defense counsel represented Golding through much of the proceedings, Golding's claims focus exclusively on Mr. Goltzer's representation. (*See* Pet.'s Mem.). The defense strategy pursued by both attorneys was to argue that Simpson's murder was in no way related to a drug conspiracy. Defense counsel thus argued that Simpson was not killed in retaliation for a robbery that undermined Peterkin's marijuana business, but as an act of personal revenge. Counsel claimed that Simpson was killed because he and Ken had attacked Peterkin's family, duct-taped Peterkin's two-year old daughter to the bed, and sexually assaulted Peterkin's wife Rachel on the night of the robbery.

*Golding v. United States*, No. 05-538, 2014 WL 2959296, at *1–2 (S.D.N.Y. July 2, 2014), *report and recommendation adopted*, 2014 WL 4977481 (Sept. 29, 2014).

After a two-week trial, a jury convicted Petitioner of "conspiring to distribute and possess with intent to distribute 100 kilograms or more of marijuana (Count One); using firearms to commit a murder in furtherance of that conspiracy (Count Two); carrying firearms during that conspiracy (Count Three); and being an alien in possession of a firearm (Count [Five])." *Id*. at *1.

Ultimately, in September of 2008, the Southern District of New York sentenced Petitioner to 420 months in prison, on each of Counts One, Two, and Five, to run concurrently. (*U.S. v. Golding*, Crim. No. 05-538, ECF No. 113, at 2.)  The court did not impose a sentence on Count Three. (*Id*.)

Petitioner appealed, and the Second Circuit affirmed. *United States v. Brown*, 374 F. App'x 208, 211 (2d Cir. 2010) (addressing the appeal of Petitioner and his codefendants).  Thereafter, Petitioner filed a motion to vacate, correct, or set aside sentence under 28 U.S.C. § 2255, and his sentencing court denied that motion and did not issue a certificate of appealability. *Golding v. United States*, No. 05-538, 2014 WL 4977481, at *1 (S.D.N.Y. Sept. 29, 2014).  It appears that Petitioner did not request a certificate of appealability from the Second Circuit.

Petitioner filed the instant § 2241 Petition in May of 2020.  In his Petition, Petitioner argues that *one* of his three convictions and *one* of his three sentences, are no longer valid in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  Respondent filed an Answer opposing relief, (ECF No. 13), and Petitioner did not file a reply.

## II.    STANDARD OF REVIEW

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).

A court addressing a petition for writ of habeas corpus "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.  A district court may "dismiss a petition summarily when it plainly appears from the face of the petition and any exhibits . . . that the petitioner is not entitled to relief." *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996).

If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary

hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

### III.   DISCUSSION

Petitioner contends that his conviction and sentence under 18 U.S.C. § 922(g)(5)(A) are no longer valid in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019). "In *Rehaif*, the Supreme Court held that 'the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm' to obtain a conviction under § 922(g)." *Farrell v. Warden FCI Fairton*, No. 20-4414, 2021 WL 222684, at *2 (D.N.J. Jan. 22, 2021) (quoting *Rehaif*, 139 S. Ct. at 2200). In response, Respondent contends, among other things, that the Court should dismiss this matter pursuant to the concurrent sentence doctrine.

Under the concurrent sentence doctrine, "a federal court may decline to review an alleged error where concurrent sentences were imposed on separate counts, where the alleged error is associated with only one count, and where the remaining sentences are unassailable." *Nosov v. Schuylkill*, 634 F. App'x 379, 380 (3d Cir. 2016); *see also Logan v. Dist. Att'y Allegheny Cty.*, 752 F. App'x 119, 122 (3d Cir. 2018); *Gardner v. Warden Lewisburg USP*, 845 F.3d 99, 104 (3d Cir. 2017);  *Edelman v. Bradley*, No. 20-01040, 2020 WL 4819870, at *3 (M.D. Pa. Aug. 19, 2020) (declining to consider a *Rehaif* claim in a § 2241 petition under the concurrent sentence doctrine).

As the Third Circuit reasoned, because a petitioner "remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility.  The practice is eminently practical and conserves judicial resources for more pressing needs." *See Jones v. Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986).  Courts should apply the doctrine "only when it is apparent that the [petitioner] will not suffer collateral consequences from the unreviewed conviction." *See Nosov*, 634 F. App'x at 380.

In the direct appeal context, collateral consequences can include "a potential delay in the defendant's eligibility for parole, an increased sentence under a recidivist statute for a future offense, the use of the additional conviction to impeach the defendant's credibility, and the societal stigma accompanying any criminal conviction." *United States v. Ross*, 801 F.3d 374, 382 (3d Cir. 2015) (citing *Ball v. United States*, 470 U.S. 856, 865 (1985)).

In the habeas context, however, "the collateral consequences of a conviction for . . . a concurrent sentence . . . must rise to the level of 'custody' to be redressable." *Logan*, 752 F. App'x at 122 (citing *Gardner*, 845 F.3d at 104; *Ross*, 801 F.3d at 383).  The Third Circuit explained that the "term 'custody' in federal habeas statutes is 'designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty.'" *Id*. at 122 n.5 (quoting *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973)).  As a result, "the collateral consequences that attach to the conviction at issue must pose a severe and immediate restraint on the petitioner that is not shared by the public generally." *Id*.

In the present case, in addition to Petitioner's 420-month sentence for his alien in possession of a firearm conviction, 18 U.S.C. § 922(g)(5)(A),  Petitioner is serving two additional 420-month sentences for his convictions for conspiracy to distribute and possess with intent to distribute 100 kilograms or more of marijuana, 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), and for

use of a firearm to commit murder in furtherance of that conspiracy, 18 U.S.C. § 924(j)(1). (*U.S. v. Golding*, Crim. No. 05-538, ECF Nos. 40, 113.)

As the Second Circuit and the Southern District of New York determined through Petitioner's direct appeal and § 2255 proceedings, Petitioner's two other 420-month sentences remain valid. Accordingly, even if Petitioner is successful in this Petition, it would only abrogate one of his three 420-month sentences, and "any potential relief would not reduce the time he is required to serve." *Logan*, 752 F. App'x at 122; *Edelman*, 2020 WL 4819870, at *3.

As to collateral consequences, Petitioner had the opportunity, but did not file a reply in this case. Consequently, "Petitioner has not demonstrated that he would suffer any collateral consequences arising from his challenged conviction, let alone any collateral consequences that rise to the level of 'custody' for purposes of § 2241." *Edelman*, 2020 WL 4819870, at *3 (citing *Gardner*, 845 F.3d at 104 ("Although the range of adverse collateral consequences is quite broad . . . Gardner cannot show that any rise to the level of 'custody' in this case given his other life sentences.")).

Indeed, "it is hard to see any significant collateral consequence originating from his conviction under" § 922(g)(5)(A), that are separate from his convictions for conspiracy to distribute over 100kg of marijuana and for use of a firearm to commit murder in furtherance of that conspiracy.[1] *Ross*, 801 F.3d at 383 ("Though pressed at oral argument, Ross could not point

---

[1] In the habeas context, Courts have rejected a long list of alleged collateral consequences, finding that they do not rise to the level of "custody." *Logan*, 752 F. App'x at 122 n.6 ("The bare possibility that the relevant Pennsylvania court might remand for resentencing, and that the trial court might then impose a lower sentence, is so remote as to be 'nothing more than speculation' and therefore does not rise to the level of 'custody.'"); *Gardner*, 845 F.3d at 104 (finding that special monetary assessments do not rise to the level of "custody"); *Ross*, 801 F.3d at 383 (finding that greater social stigma, weaker credibility at future hearings or trials, the potential bar to obtaining the benefit of future changes to the law, the effect on his eligibility for parole, or the potential effect on the length of a future sentence if he is convicted of a future crime, do not rise to the level of "custody").

to a collateral consequence not already existing as a result of his prior felony convictions or his seven other felony convictions in this case.")  Accordingly, under these circumstances, the Court finds that it is appropriate to utilize the concurrent sentence doctrine and dismiss the Petition.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss the Petition.  An appropriate Order follows.


DATED:  March 28, 2022

/s/ Christine P. O'Hearn_____
**Christine P. O'Hearn**
**United States District Judge**